UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOSEPH JOHNSON,

    Plaintiff,                                       Hon. Jane M. Beckering

v.                                                 Case No. 1:20-cv-1102

CLAIR SOOTSMAN, et al.,

    Defendants.

_____/

## REPORT AND RECOMMENDATION

Plaintiff Joseph Johnson has sued Defendants Clair Sootsman, Chantel Einhardt, and Taliah Harris, pursuant to 42 U.S.C. § 1983, alleging claims based on an incident that occurred on February 14, 2020 at the Kalamazoo County Jail, where Defendants were employed as deputies. Johnson alleges that Sootsman and Einhardt violated his Eighth Amendment rights by use of excessive force and that Harris violated his rights by failing to intervene to prevent the use of such force. Johnson also alleges a state-law assault and battery claim against Sootsman and Einhardt.

Presently before me are Defendants Einhardt's and Harris's Motion for Summary Judgment (ECF No. 45), and Defendant Sootsman's Motion for Summary Judgment (ECF No. 46). Pursuant to 28 U.S.C. § 636(b)(1)(B), I recommend that the Court **GRANT** Defendants' motions as to the Eighth Amendment claims. I further recommend that the Court decline to exercise supplemental jurisdiction over the assault and battery claims and **DISMISS** them without prejudice.[1]

---

[1] Defendants' requests for oral argument are denied because the issues are adequately briefed, and oral argument would not further aid the decisional process.

## I. Background

On February 13, 2020, Johnson pled guilty to a probation violation and was sentenced to serve several weeks in jail. (ECF No. 45-10.) He was booked into the Kalamazoo County Jail and placed in the intake area pending his classification, which occurred the following day. By mid-afternoon on February 14, Johnson had been screened for classification and was assigned to a cell in the jail's general population in the B-West wing. (ECF No. 45-6 at PageID.233–34.) As Johnson sat in the common area waiting to be moved to the general population, he became agitated following an interaction with Deputy Miller. (*Id.* at PageID.234; ECF No. 45-7 at PageID.263–64.) When Defendant Einhardt entered the intake area, she noticed Johnson arguing with Deputy Miller and determined that the situation was quickly escalating. (ECF No. 45-6 at PageID.234.) Einhardt believed that she could calm Johnson by removing him from the situation, and thus told him that she was taking him to his assigned cell in B-West wing. (*Id.*) Due to Johnson's agitated state, Einhardt asked Defendant Harris to assist her with the move. (ECF No. 45-4 at PageID.199; ECF No. 45-6 at PageID.234.) Deputy Miller eventually joined Einhardt and Harris to assist, if necessary. (ECF No. 45-7 at PageID.266.)

Einhardt, Harris, and Deputy Miller followed Johnson from the intake area into the adjacent hallway leading to the general population areas. Johnson was not handcuffed and was holding his jail-issued property, including a blanket, sheets, a towel, a cup, and any court paperwork that he might have had, in his right hand. (ECF No. 45-6 at PageID.234–35.) At the same time, Defendant Sootsman was escorting two other inmates, who also were not handcuffed, from the intake area into the hallway. The events that occurred next in the hallway are depicted on jail surveillance video.

Sootsman led the way down the hallway, followed by the inmates he was escorting. Johnson was next, followed by Einhardt, Harris, and Deputy Miller. As the group proceeded,

Johnson began walking quickly. Einhardt ordered him to slow down and wait for her. (ECF No. 45-3 at PageID.178; ECF No. 45-6 at PageID.235.) Johnson ignored Einhardt's commands and continued walking quickly. (*Id.*) Sootsman stepped through the doorway and waited for his inmates to do the same, as he looked to see who was causing the commotion behind him. (ECF No. 45-5 at PageID.215.) As Sootsman resumed walking with the inmates, Johnson caught up to them and tried to pass them on the right side, while Einhardt hurried to keep up with him.[2] Sootsman pointed his finger toward Johnson. Johnson continued to walk for about another 20 feet and finally stopped with his back toward the wall. Sootsman asked Johnson why he did not slow down or stop for Einhardt as she had commanded, but Johnson did not answer. (*Id.* at 236.) Sootsman repeatedly pointed his finger at Johnson and yelled at him while Einhardt and Harris stood nearby. Sootsman told Johnson that he was "being a pussy" and asked Johnson why he would not "look him in the eyes." (ECF No. 45-3 at PageID.186–87; ECF No. 45-6 at PageID.236.) Johnson responded in a normal tone of voice, "I am." (ECF No. 45-3 at PageID.178, 187; ECF No. 454-4 at PageID.201; ECF No. 45-6 at PageID.237.) A second or two later Johnson took a step toward Sootsman and to the right, as if to continue on toward the general population wing. Sootsman interpreted the step as a threat (ECF No. 45-5 at PageID.217), although the other deputies either did not see Johnson take the step or did not interpret it as threatening. (ECF No. 45-4 at PageID.201; ECF No. 45-6 at PageID.236; ECF No. 45-7 at PageID.270–71.) In response, Sootsman immediately extended his arm and pinned Johnson against the wall for two-to-three seconds. Sootsman then turned Johnson around away from the wall and grabbed him around the neck from behind, while Einhardt grabbed his arm, and the two deputies laid him on the ground. Einhardt then put Johnson's arms behind his

---

[2] The video looking toward the intake area shows Johnson talking the entire time as he walked through the doorway and continued down the hallway until Sootsman confronted him. It is not clear whom, if anyone, Johnson was addressing.

3

back and placed him in handcuffs. (ECF No. 45-6 at PageID.237.) Harris assisted Einhardt in handcuffing Johnson. (ECF No. 45-8 at PageID.272.) Sootsman and Einhardt lifted Johnson to his feet, and Sootsman escorted him to the designated wing, where other deputies took control of Johnson. (*Id.* at PageID.276–77.) Einhardt, Harris, and Deputy Miller walked behind Sootsman and Johnson but had no further interaction with Johnson.

Following the incident, an internal Sheriff's Office investigation found that, contrary to policy, Sootsman had improperly used force on Johnson and that Sootsman had likely committed an assault and battery. (ECF No. 52-3 at PageID.766; ECF No. 52-4 at PageID.777.) The matter was ultimately referred to the prosecutor's office, and Sootsman was charged with assault and battery, to which he pled guilty. (ECF No. 52-5.)

Johnson suffered no visible injury from the incident and did not receive medical care while he was confined at the jail. (ECF No. 45-3 at PageID.180; 52-3 at PageID.766.) He did not see a doctor for wrist or back pain until March 2021—more than a year after the incident and about four months after he filed this action. (*Id.*; ECF No. 52-12.)

## II.  Motion Standard

Summary judgment is appropriate if there is no genuine issue as to any material fact, and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). Material facts are facts that are defined by substantive law and are necessary to apply the law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S. Ct. 2505, 2510 (1986). A dispute is genuine if a reasonable jury could return judgment for the non-moving party. *Id.*

The court must draw all inferences in a light most favorable to the non-moving party, but may grant summary judgment when "the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Agristor Fin. Corp. v. Van Sickle*, 967 F.2d 233, 236 (6th Cir. 1992) (quoting *Matsushita Elec. Indus. Co. Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587

4

(1986)). When video evidence is presented, witness testimony will not create a genuine issue of material fact if the video is unambiguous and answers the pertinent factual questions. *See Shreve v. Franklin Cnty.*, 743 F.3d 126, 132 (6th Cir. 2014) (citing *Scott v. Harris*, 550 U.S. 372, 380–81 (2007)).

### III.  Discussion

#### A.  Section 1983 Claim

All Defendants raise the defense of qualified immunity. (ECF No. 45-1 at PageID.154–55; ECF No. 46 at PageID.347–50.) "Under the doctrine of qualified immunity, 'government officials performing discretionary functions generally are shielded from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known.'" *Phillips v. Roane Cnty.*, 534 F.3d 531, 538 (6th Cir. 2008) (quoting *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). Once a defendant raises the qualified immunity defense, the burden shifts to the plaintiff to demonstrate that the defendant officer violated a right so clearly established "that every 'reasonable official would have understood that what he [was] doing violate[d] that right.'" *Ashcroft v. al-Kidd*, 563 U.S. 731, 741 (2011) (quoting *Anderson v. Creighton*, 483 U.S. 635, 640 (1987)). The analysis entails a two-step inquiry. *Martin v. City of Broadview Heights*, 712 F.3d 951, 957 (6th Cir. 2013). First, the court must "determine if the facts alleged make out a violation of a constitutional right." *Id.* (citing *Pearson v. Callahan*, 555 U.S. 223, 232 (2009)). Second, the court asks if the right at issue was "'clearly established' when the event occurred such that a reasonable officer would have known that his conduct violated it." *Id.* (citing *Pearson*, 555 U.S. at 232). A court may address these steps in any order. *Id.* (citing *Pearson*, 555 U.S. at 236). A government official is entitled to qualified immunity if either step of the analysis is not satisfied. *See Citizens in Charge, Inc. v. Husted*, 810 F.3d 437, 440 (6th Cir. 2016).

In applying the first step of the qualified immunity analysis, a court must identify "the specific constitutional right allegedly infringed" and determine whether a violation occurred. *Graham v. Connor*, 490 U.S. 386, 394 (1989). The court considers the state of the law at the second step. As the Supreme Court has observed, "this Court's case law does not require a case directly on point for a right to be clearly established, [but] existing precedent must have placed the statutory or constitutional question beyond debate." *White v. Pauly*, 137 S. Ct. 548, 551 (2017) (internal quotation marks and original brackets omitted) (quoting *Mullenix v. Luna*, 577 U.S. 7, 12 (2015)). "'[C]learly established law' may not be defined at such 'a high level of generality.'" *Arrington-Bey v. City of Bedford Heights*, 858 F.3d 988, 992 (6th Cir. 2017) (quoting *Ashcroft v. al-Kidd*, 563 U.S. 731, 742 (2011)). "[A] plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Id.* at 993 (quoting *White*, 137 S. Ct. at 552). Stated differently, "[o]n both the facts and the law, specificity is [a court's] guiding light." *Novak v. City of Parma*, 932 F.3d 421, 426 (6th Cir. 2019).

The Eighth Amendment's prohibition against cruel and unusual punishment applies not only to punishment imposed by the state, but also to deprivations that occur during imprisonment and are not part of the sentence imposed. *See Farmer v. Brennan*, 511 U.S. 825, 834 (1994); *Estelle v. Gamble*, 429 U.S. 97, 101-02 (1976). Punishment that is without penological justification or involves the unnecessary and wanton infliction of pain also violates the Eighth Amendment's proscriptions. *See Rhodes v. Chapman*, 452 U.S. 337, 346 (1981). In other words, the Eighth Amendment prohibits "the gratuitous infliction of suffering." *Gregg v. Georgia*, 428 U.S. 153, 183 (1976).

The Supreme Court has held that "whenever guards use force to keep order," the standards set forth in *Whitley v. Albers*, 475 U.S. 312 (1986), should be applied. *Hudson v. McMillian*, 503

U.S. 1, 6 (1992). Under *Whitley*, the core judicial inquiry is "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Hudson*, 503 U.S. at 6–7. In determining whether the use of force is wanton and unnecessary, a court should evaluate the need for application of force, the relationship between that need and the amount of force used, the threat "reasonably perceived by the responsible officials," and any effort made to temper the severity of the forceful response. *Id.* (citing *Whitley*, 475 U.S. at 321). In *Wilkins v. Gaddy*, 559 U.S. 34 (2010), the Supreme Court affirmed that the "core judicial inquiry" is "not whether a certain quantum of injury was sustained, but rather whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* at 37 (quoting *Hudson*, 503 U.S. at 7). The Court noted that the degree of injury is still relevant to the inquiry, as it may shed some light on the amount of force used, but "[a]n inmate who complains of a 'push or shove' that causes no discernible injury almost certainly fails to state a valid excessive force claim." *Id.* at 38 (quoting *Hudson*, 503 U.S. at 9).

An Eighth Amendment claim has both an objective and a subjective component. *Cordell v. McKinney*, 759 F.3d 573, 580 (6th Cir. 2014) (citing *Santiago v. Ringle*, 734 F.3d 585, 590 (6th Cir. 2013)). The objective component requires the "pain inflicted to be 'sufficiently serious'" to offend "contemporary standards of decency." *Id.* at 580 (quoting *Williams v. Curtin*, 631 F.3d 380, 383 (6th Cir. 2011); *Hudson*, 503 U.S. at 8). The subjective component asks "whether force was applied in a good-faith effort to maintain or restore discipline, or maliciously and sadistically to cause harm." *Id.* (quoting *Hudson*, 503 U.S. at 7).

7

1.   **Defendant Sootsman—Excessive Force**

   a.   **Collateral Estoppel**

As an initial matter, Johnson argues that Sootsman is collaterally estopped by his guilty plea to assault or assault and battery from relitigating his defenses/arguments in this case. Johnson is correct that this Court must give the same preclusive effect to Sootsman's guilty plea as Michigan courts would accord it. *See Buck v. Thomas M. Cooley Law Sch.*, 597 F.3d 812, 817 (6th Cir. 2010) (quoting *Abbott v. Michigan*, 474 F.3d 324, 330 (6th Cir. 2007)) ("Federal courts must give the same preclusive effect to a state-court judgment as that judgment receives in the rendering state.").

In spite of raising the issue, he fails to develop the argument, and even limits it to "the state law assault and battery claim." (ECF No. 51 at PageID.584.) Accordingly, I deem it waived as to the Eighth Amendment claim. *See El-Moussa v. Holder*, 569 F.3d 250, 257 (6th Cir. 2009) ("Issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived. It is not sufficient for a party to mention a possible argument in [a] skeletal way, leaving the court to put flesh on its bones.") (internal quotation marks omitted). Moreover, for the doctrine to apply, the issues in both actions "must be identical, and not merely similar." *Rental Props. Owners Ass'n of Kent Cnty. v. Kent Cnty. Treasurer*, 308 Mich. App. 498, 529 (2014). Here, Johnson fails to show, let alone argue, that any of the issues in this Eighth Amendment excessive force claim are identical to those in Sootsman's criminal prosecution for assault. *See Nelson v. Ola*, No. 3:18-cv-129, 2019 WL 1672319, at *2-3 (M.D. Tenn. Apr. 17, 2019) (rejecting the plaintiff's argument for application of collateral estoppel under Tennessee law because the plaintiff failed to demonstrate that the issues in his Eighth Amendment excessive force case were identical to those in the defendant's prosecution for assault).

Indeed, the standard for an Eighth Amendment claim requiring the gratuitous infliction of suffering is different than that for Michigan's misdemeanor criminal charge of assault and battery. "A simple assault is either an attempt to commit a battery or an unlawful act that places another in reasonable apprehension of receiving an immediate battery." *People v. Terry*, 217 Mich. App. 660, 662 (1996). Battery is defined as "the wilful and harmful or offensive touching of another person which results from an act intended to cause such contact." *Smith v. Stolberg*, 231 Mich. App. 256, 260 (1998).

### b.     Constitutional Violation

In support of summary judgment, Sootsman contends that Johnson's excessive force claim fails because he cannot establish either component. Sootsman argues that there is no evidence that he intended to inflict pain on Johnson. He notes that it is undisputed that Johnson was agitated and not following Einhardt's orders to slow down and that he applied force only when he perceived Johnson's act of stepping toward him to be a threat. Sootsman further points out that the entire encounter lasted only about 45 seconds, and force was used only for a brief portion of that time. Sootsman also notes that, contrary to Johnson's claim, the video, consistent with Einhardt's testimony, shows that he did not choke Johnson by grabbing his neck, but only extended his arm to Johnson's chest and the base of his neck. Sootsman also points out that Johnson was not treated for any injury during his stay at the jail, and he cannot connect the treatment he did receive more than a year later to the incident at issue. Finally, Sootsman contends that there is no evidence that he had a history with Johnson that day or any other day or that he had a history of improper conduct toward any inmate. (ECF No. 46 at PageID.342–44.)

Johnson responds that the evidence, including the video footage, suffices to create a genuine issue of material fact as to whether Sootsman used force not in a good faith effort to

9

maintain control, but for malicious and sadistic purposes. Johnson asserts that the video footage and other evidence shows that he was compliant, did not raise his voice, and merely took a step forward and to the right to continue to his cell when he thought the encounter with Sootsman had ended. Johnson also contends that it was Sootsman, rather than Johnson, who was agitated and out of control. (ECF No. 51 at PageID.584.)

For the reasons that follow, I conclude that Johnson has failed to establish the objective component of an Eighth Amendment violation. Despite Johnson's lack of recall (ECF No. 45-3 at PageID.186), the video confirms Einhardt's, Harris's, Sootsman's, and Miller's testimonies that Johnson was agitated, upset, loud, "very verbal," and causing a commotion. (ECF No. 45-4 at PageID.199; ECF No. ECF No. 45-5 at PageID.215; ECF No. 45-6 at PageID.234; ECF No. 45-7 at PageID.267.) Although the video has no audio, it shows Sootsman looking through the doorway to determine the source of the commotion and Johnson talking nonstop as he passes through it and continues down the hall. (B Floor Hallway W3 at 3:26:19–28.) It further shows that, despite Einhardt's orders to slow down, Johnson did not do so and hurried to pass Sootsman and his inmates, with Einhardt attempting to keep up, evincing an intent to proceed at his own pace. (*Id.* at 3:26:29–34; B Floor Hallway W4 at 3:26:30–38.) In fact, even after Sootsman engaged Johnson, he continued on for about another 20 feet before he stopped. Thus, despite Johnson's claim that he was compliant and did not raise his voice, by the time Sootsman had stopped him, he had been both noncompliant and boisterous. Johnson was compliant for a brief time after he stopped walking, but then stepped toward Sootsman and to the right before Sootsman had finished lecturing him.

Turning to the *Whitley* factors*,* the first inquiry is the need for force. Arguably, there was no such need as Johnson had calmed down, his hands were occupied with his linens and other

10

items, and the video suggests an intent to simply to carry on with his journey to general population. But Sootsman had just observed Johnson ignoring Einhardt's orders and creating a "commotion;" he had reason to believe that some force might be necessary to control Johnson. *See Griffin v. Hardrick*, 604 F.3d 949, 955 (6th Cir. 2010) ("The fact that Griffin had been engaged in a loud, lengthy, and animated conversation with the nurse gave Hardrick a reasonable basis to believe that force would be necessary to control Griffin."). It also bears noting that Johnson was not handcuffed, even though policy dictated that he should have been, given his agitated demeanor and attitude. (ECF No. 45-6 at PageID.242; ECF No. 50-3 at PageID.510.) Moreover, two other prisoners, who also were not in handcuffs, were standing nearby, thus adding to the security risk that Johnson's noncompliance had created. As for Sootsman's belief that Johnson's step toward him constituted a threat, even if a reasonable jury could find otherwise, at a minimum the undisputed evidence shows Johnson once again failing to comply with orders by attempting to walk away while Sootsman was speaking to him. Even if Johnson believed that the encounter had concluded, he points to no evidence that Sootsman had released him. Given these circumstances, Sootsman could have reasonably believed that Johnson was failing to follow directions and that some force was necessary to control him. The question under *Whitley* is not whether the need for force was certain, but whether it "could plausibly have been thought necessary." 475 U.S. at 321. Here, there was a plausible need for the use of force.

     A court also considers the relationship between the need for force and the amount of force used. Johnson claims that Sootsman grabbed him by the throat, and he cites Deputy Miller's testimony that Sootsman grabbed his throat and squeezed it. (ECF No. 45-7 at PageID.272.) On the other hand, Einhardt, who was "right there" and had an unobstructed view, said that Sootsman grabbed Johnson toward the base of the neck and the chest when he pinned him against the wall.

11

(ECF No. 45-6 at PageID.237.) The video is inconclusive on this issue. (B Floor Hallway W4 at 3:26:52–54; B Floor Hallway E3 at 3:26:52–53.) Nonetheless, it provides sufficient detail and fails to show a use of force "repugnant to the conscience of mankind." *Wilkins*, 559 U.S. at 38 (internal quotation marks omitted). The entire incident involving force lasted only about seven seconds, and the evidence—including the video—shows that Johnson suffered no discernible injury, let alone an injury requiring medical treatment. As the Supreme Court has held, the degree of injury may inform whether the force was applied in good faith to maintain discipline or order. *Id.*

On this point, Johnson offers nothing more than his self-serving testimony that as soon as he arrived at his cell, he "asked to see medical, [but] they was ignoring me." (ECF No. 45-3 at PageID.180.) However, following the incident Johnson remained in the jail for two more weeks and never requested medical care, although evidence from his prior visits shows that he knew how to do so. (ECF No. 45-11 at PageID.324–25.) *See Hernandez v. Simmons*, No. 3:15-CV-00954, 2018 WL 4566823, at *12–13 (M.D. Tenn. Sept. 21, 2018) ("Hernandez does not offer any medical records documenting his injuries or any treatment; nor is there any evidence of his injuries other than his own descriptions. The only other evidence that speaks to the pain Hernandez suffered, therefore, is the video, which unmistakably contradicts Hernandez's claims of injury. . . . Because he has failed to offer any evidence to substantiate his claimed injuries, there are no triable issues of fact regarding the objective component of Hernandez's Eighth Amendment claim." (internal citations omitted); *Rogers v. Shostak*, No. 1:14CV213, 2015 WL 3604057, at *9 (S.D. Ohio June 5, 2015) ("Thus, accepting as true plaintiff's sworn deposition testimony that defendant used force against him on September 11, 2013, by punching him hard in the chest and pushing him back into his bed, plaintiff has nonetheless failed to produce sufficient evidence to establish his Eighth Amendment claim. The evidence shows that defendant's actions constituted a *de minimis* use of

12

force which caused plaintiff to suffer no discernible injury requiring medical treatment of any kind. Accordingly, there is no genuine issue of material fact and defendant is entitled to summary judgment on plaintiff's Eighth Amendment claim as a matter of law."). Although Johnson has presented medical records, they are for treatment he received more than a year after the incident and after he had filed this lawsuit. He has presented no admissible evidence connecting his subjective complaints of neck and back pain in March 2021 to this February 2020 incident. As for his wrist pain, Johnson admitted that he could not say if his wrists were injured in this incident or a prior incident, and he agreed that if jail records did not indicate that his wrists were swollen, bleeding, or wrapped after this incident, the injury must have occurred some other time. (ECF No. 45-3 at PageID.183–84.) In fact, jail records show that Johnson was placed in an emergency restraint chair in February 2019 and that his wrists were bandaged after and that he sustained wrist lacerations. (ECF No. 45-11.) Moreover, Johnson has presented no evidence that he complained to any jail official that handcuffs were too tight.

Given the foregoing considerations, I conclude that no reasonable jury could conclude that Sootsman's use of forced amounted to an Eighth Amendment violation.

### c. Clearly Established

Alternatively, or in addition to the above recommendation, I recommend that the Court conclude that Johnson has failed to demonstrate that the law was established with the requisite degree of specificity to put Sootsman on notice that his actions violated Johnson's clearly established rights. In response to a defense of qualified immunity, "a plaintiff must identify a case with a similar fact pattern that would have given 'fair and clear warning to officers' about what the law requires." *Arrington-Bey*, 858 F.3d at 992 (quoting *White*, 137 S. Ct. at 552). The Supreme Court has repeatedly stressed that "the clearly established right must be defined with specificity." *City of Escondido v. Emmons*, 139 S. Ct. 500, 503 (2019). This is particularly true in excessive

force cases, which are highly fact-dependent. *Kisela v. Hughes*, 138 S. Ct. 1148, 1152–53 (2018). Johnson cites no Eighth Amendment case with a similar fact pattern in an effort to meet this burden. The cases he cites in his brief for general propositions, *Coffey v. Carroll*, 933 F.3d 577 (6th Cir. 2019), *Eldridge v. City of Warren*, 533 F. App'x 529 (6th Cir. 2013), *Fisher v. City of Memphis*, 234 F.3d 312 (6th Cir. 2000), and *Sova v. City of Mt. Pleasant*, 142 F.3d 898 (6th Cir. 1998), involved Fourth Amendment, not Eighth Amendment, claims, which employ different standards. *See Lee v. Tinerella*, No. 1:17-cv-797, 2019 WL 5273936, at *8 (W.D. Mich. July 25, 2019), *report and recommendation adopted*, 2019 WL 4010368 (W.D. Mich. Aug. 26, 2019). Therefore, they do not provide the required specificity, and in any event, Johnson does not argue that they are factually similar to this case.

Moreover, Johnson does not argue that this is the "rare 'obvious case,' where the unlawfulness of the officer's conduct is sufficiently clear even though existing precedent does not address similar circumstances." *District of Columbia v. Wesby*, 138 S. Ct. 577, 590 (2018) (quoting *Brosseau v. Haugen*, 543 U.S. 194, 199 (2004) (per curiam)). Given the circumstances Sootsman confronted—an agitated, noncompliant and unhandcuffed prisoner in the presence of other unhandcuffed prisoners—I do not conclude that this is the rare, obvious case not requiring sufficiently similar circumstances to convey fair warning to the defendant.

Finally, as the Sixth Circuit observed in *Lawrence v. Chabot*, 182 F. App'x 442 (6th Cir. 2006), "[t]he burden of proving that the right was clearly established 'rests squarely on the plaintiff'" and the plaintiff's "fail[ure] to argue, much less provide any case law to demonstrate[] that the defendants violated clearly established constitutional rights," constitutes waiver of the issue and grounds for entitlement to qualified immunity. *Id.* at 452 (quoting *Cope v. Heltsley*, 128 F.3d 452, 459 (6th Cir. 1997)).

Accordingly, Sootsman is entitled to qualified immunity.

### 2. Defendant Einhardt—Excessive Force

As for Johnson's excessive force claim against Einhardt, no reasonable juror could conclude that Einhardt used force in a malicious or sadistic manner. The undisputed evidence shows that Einhardt did not initiate the force but merely reacted to it by getting Johnson to the ground so that he could be handcuffed. Einhardt explained in her deposition that Sootsman's use of force was completely unexpected, *i.e.*, "out of the blue." (ECF No. 45-6 at PageID.236.) In fact, Johnson conceded that the other deputies "looked as shocked" as he was. (ECF No. 45-3 at PageID.45-3.) In seconds, Einhardt determined that the best way to defuse the situation was to get Johnson away from the wall and onto the ground so that he could be handcuffed. (ECF No. 237 at PageID.237.) The video evidence shows that Einhardt handled the situation appropriately and that she applied force in a good-faith effort to restore order. Moreover, the video evidence shows that Einhardt (and Sootsman) did not "forcefully" take Johnson to the ground, as he asserts. (ECF No. 52 at PageID.731.)

Johnson's claim against Einhardt also fails under the clearly established prong, as he fails to identify a case that would have given Einhardt fair notice that her actions violated Johnson's clearly established rights. As Einhardt points out in her brief, her involvement in this incident was similar to the defendant Crouthers's involvement in *Degolia v. Kenton County*, 381 F. Supp. 3d 740 (E.D. Ky. 2019), which was limited to reacting to another officer's use of force by attempting to secure the plaintiff. *Id.* at 758. The video evidence merely showed Crouthers on top of the plaintiff attempting to grab his hands to apply handcuffs. The court found no violation of clearly established law. *Id.* at 758–59. Likewise, here, Einhardt applied minimal force and did not violate Johnson's clearly established rights.

### 3. Defendant Harris—Failure to Intervene

I conclude that Harris is entitled to summary judgment on Johnson's failure-to-intervene claim. To establish a failure to intervene claim, a plaintiff "must show that the officers (1) 'observed or had reason to know that excessive force would be or was being used, and (2) . . . had both the opportunity and the means to prevent the harm from occurring.'" *Sheffey v. City of Covington*, 564 F. App'x 783, 793 (6th Cir. 2014) (quoting *Turner v. Scott*, 119 F.3d 425, 429 (6th Cir. 1997)). As for the first element, the plaintiff must show that it was clear that the officer knew or had reason to know that the incident she was witnessing constituted excessive force. *See Ontha v. Rutherford Cnty.*, 222 F. App'x 498, 506 (6th Cir. 2007). Even if the officer was aware that she was witnessing an incident of excessive force, she must have had sufficient time to act to stop it. *See Burgess v. Fischer*, 735 F.3d 462, 475 (6th Cir. 2013) (observing that a plaintiff must "demonstrate that the incident lasted long enough for [the officers] to both perceive what was going on and intercede to stop it"). As the Sixth Circuit has recognized, courts are generally unwilling to impose a duty to intervene when the incident unfolds "in a matter of seconds." *Ontha*, 222 F. App'x at 506.

The undisputed evidence shows that the incident involving force was over in a matter of seconds and, like Einhardt, Harris had no reason to believe that Sootsman intended to use force on Johnson. As noted, Johnson admitted that the other deputies looked "shocked." Johnson's argument that Harris should have expected that Sootsman would use force based on his "out of control behavior" (ECF No. 52 at PageID.749), is an unreasonable interpretation of the video evidence. The Eighth Amendment does not require that prison officials be prescient. Harris had neither the opportunity nor the means of preventing Sootsman from using force.

16

### B.     Assault and Battery

If the Court adopts the above recommendations, it must decide whether to exercise supplemental jurisdiction over Johnson's assault and battery claims. *See Pinney Dock & Transp. Co. v. Penn Cent. Corp.*, 196 F.3d 617, 620 (6th Cir. 1999) ("[D]istrict courts have 'broad discretion in deciding whether to exercise supplemental jurisdiction over state law claims.'") (quoting *Musson Theatrical, Inc. v. Fed. Exp. Corp.*, 89 F.3d 1244, 1254 (6th Cir. 1996)). "Supplemental jurisdiction is a doctrine of discretion, not of plaintiff's right." *Habich v. City of Dearborn*, 331 F.3d 524, 535 (6th Cir. 2003).

Generally, where all federal claims have been dismissed, federal courts decline to exercise supplemental jurisdiction over a plaintiff's state-law claims. *See* 28 U.S.C. § 1367(c)(3); *see also Brown v. Cassens Transp. Co.*, 546 F.3d 347, 363 (6th Cir. 2008); *Robert N. Clemens Trust v. Morgan Stanley DW, Inc.*, 485 F.3d 840, 853 (6th Cir. 2007). There is no reason in this case to depart from the general rule.

### IV.    Conclusion

For the reasons set forth above, I recommend that the Court **grant** Defendants' Motions for Summary Judgment (ECF Nos. 45 and 46 ) with regard to Johnson's Eighth Amendment claims and decline to exercise supplemental jurisdiction over his assault and battery claims, dismissing them without prejudice.

Dated: July 1, 2022                                      /s/ Sally J. Berens
                                                         SALLY J. BERENS
                                                         U.S. Magistrate Judge

### NOTICE TO PARTIES

OBJECTIONS to this Report and Recommendation must be filed with the Clerk of Court within 14 days of the date of service of this notice. 28 U.S.C. § 636(b)(1)(C). Failure to file

objections within the specified time waives the right to appeal the District Court's order. *See Thomas v. Arn*, 474 U.S. 140 (1985); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).